❏ Original        ❏ Duplicate Original

# UNITED STATES DISTRICT COURT
### for the
Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br>Records and information associated with the cellular<br>device assigned call number 414-336-1768 (Subject<br>Cell Phone), further described in Attachment A | )<br>)<br>)  Case No.  26-820M(NJ)<br>)<br>)<br>) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B

**YOU ARE COMMANDED** to execute this warrant on or before   1/27/2026   *(not to exceed 14 days)*
❏ in the daytime 6:00 a.m. to 10:00 p.m.    ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to      Honorable Nancy Joseph      .
*(United States Magistrate Judge)*

☑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☑ for   30   days *(not to exceed 30)*    ❏ until, the facts justifying, the later specific date of _____   .

Date and time issued:      1/13/2026 @ 10:01 a.m.            *Judge's signature*

City and state:        Milwaukee, Wisconsin            Honorable Nancy Joseph, U.S. Magistrate Judge
*Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

| Inventory made in the presence of : |
|---|

| Inventory of the property taken and name(s) of any person(s) seized: |
|---|

| **Certification** |
|---|

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

### Property to Be Searched

1.      Records and information associated with the cellular device assigned call number **414-336-1768** (referred to herein and in Attachment B as the **"Subject Cell Phone"**), that is in the custody or control of VERIZON (referred to herein and in Attachment B as the "Service Provider"), a wireless telephone service provider headquartered in 1095 6th Avenue, New York, New York, with no known subscriber information, and used by Antonio WESLEY-CARTER.

2.      The **Subject Cell Phone**

## ATTACHMENT B

### Particular Things to be Seized

**I.**     **Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A.

    a.   The following subscriber and historical information about the customers or subscribers associated with **414-336-1768 (Subject Cell Phone)** for the time period from September 19, 2025 to the present:

       i.   Names (including subscriber names, usernames, and screen names);

       ii.   Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

       iii.   Local and long-distance telephone connection records;

       iv.   Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

       v.   Length of service (including start date) and types of service utilized;

       vi.   Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

       vii.   Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address);

       viii.   Means and source of payment for such service (including any credit card or bank account number) and billing records; and

ix. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by **414-336-1768 (Subject Cell Phone)**, including:

(A) the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and
(ii) information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received).

b. Information associated with each communication to and from **414-336-1768 (Subject Cell Phone)** for a period of 30 days from the date of this warrant, including:

 i. Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

 ii. Source and destination telephone numbers;

 iii. Date, time, and duration of communication; and

 iv. All data about the cell towers (i.e., antenna towers covering specific geographic areas) and sectors (i.e., faces of the towers) to which the Subject Cell Phone will connect at the beginning and end of each communication.

The Honorable William E. Duffin has also issued an order pursuant to 18 U.S.C. § 3123, dated December 4, 2025, for such information associated with the **Subject Cell Phone**.

c. Information about the location of **414-336-1768 (Subject Cell Phone)** for a period of 30 days, during all times of day and night. "Information about the location of **414-336-1768 (Subject Cell Phone)** includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information.

 i. To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Provider, the Provider is required to disclose the Location Information to the government. In addition, the Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Provider's services, including by initiating a signal to determine the location of **414-336-1768**

**(Subject Cell Phone)** on the Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate the Provider for reasonable expenses incurred in furnishing such facilities or assistance.

ii. This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II.    Information to be Seized by the Government

All information described above in Section I that constitutes evidence, fruits, contraband, and instrumentalities of violations of 21 U.S.C. §§ 841(a)(1), 843(b), and 846 (TARGET OFFENSES) involving WESLEY-CARTER during the period November 1, 2025, to the present.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

This warrant does not authorize the seizure of any tangible property.  In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information.  See 18 U.S.C. § 3103a(b)(2). The Court finds reasonable necessity for use of the techniques and collection of information described.  See 18 U.S.C. § 3103a(b)(2).

# UNITED STATES DISTRICT COURT
### for the
Eastern District of Wisconsin

<table>
<tr>
<td>
In the Matter of the Search of<br>
<i>(Briefly describe the property to be searched<br>
or identify the person by name and address)</i><br><br>
Records and information associated with the cellular<br>
device assigned call number 414-336-1768 (Subject<br>
Cell Phone), further described in Attachment A
</td>
<td>)<br>)<br>)<br>)<br>)<br>)<br>)</td>
<td>Case No. 26-820M(NJ)</td>
</tr>
</table>

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 21 U.S.C. §§ 841(a)(1), 843(b), and 846 | Distribution of a Controlled Substance, Possession with the Intent to Distribute a Controlled Substance, Use of a Communication Facility in Furtherance of a Drug Trafficking Offense, and Conspiracy to Distribute a Controlled Substance |

The application is based on these facts:

See attached Affidavit

☑ Continued on the attached sheet.

☑ Delayed notice of __30__ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

PATRICK BECKMAN  Digitally signed by PATRICK BECKMAN
Date: 2026.01.11 20:38:13 -06'00'
*Applicant's signature*

Patrick Beckman, DEA Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

telephone _____ *(specify reliable electronic means)*.

Date: 1/13/2026

*Judge's signature*

City and state:  Milwaukee, Wisconsin

Honorable Nancy Joseph, U.S. Magistrate Judge
*Printed name and title*

I, Patrick Beckman, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AFFIANT BACKGROUND**

1.      I make this affidavit in support of an application a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number **414-336-1768 (Subject Cell Phone)**, whose service provider is VERIZON, a wireless telephone service provider headquartered in 1095 6th Avenue, New York, New York. The **Subject Cell Phone** is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.   The subscriber of the **Subject Cell Phone** is unknown and I believe that it is currently being used by Antonio WESLEY-CARTER.

2.      In this application, the United States seeks (1) historical cell-site location information; (2) historical precision location information; (3) prospective, real-time cell-site location information; (4) prospective, real-time precision location information (i.e., E-911 Phase II data and GPS); and (5) subscriber information and other historic non-content records and information.

3.      Because this warrant application seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), I also make this affidavit in support of an application by the United States of America for an order pursuant to 18 U.S.C §§ 3122 and 3123, authorizing the installation and use of pen registers and trap and trace devices ("pen-trap devices") to record, decode, and/or capture dialing,

routing, addressing, and signaling information associated with each communication to or from the **Subject Cell Phone**.

4. I am an investigator and law enforcement officer of the United States, within the meaning of Section 2510(7) of Title 18, United States Code, and am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code.

5. That your affiant is currently employed as a Special Agent with the Drug Enforcement Administration (DEA), Chicago Division, Milwaukee District Office. I was hired by the DEA in October of 2016, as a Special Agent. In November of 2016, I attended a 16-week Basic Agent Training Course at the DEA Academy located in Quantico, Virginia. Upon graduation from the DEA academy in March of 2017, I was assigned to the Chicago Division, Rockford Resident Office as a Special Agent tasked with investigating violations of state and federal drug trafficking laws. I transferred to the Green Bay Resident Office in September of 2022 and the Milwaukee District Office in 2025. Prior to my employment with the DEA, I served in the United States Marine Corps / Reserve from 2010 to 2015 and was a Trooper with the Illinois State Police from 2011 to 2016. I attended the Illinois State Police Academy located in Springfield Illinois from August of 2011 through March of 2012. Upon completion I was certified as a law enforcement officer in the State Of Illinois. My duties as a trooper included enforcement of the Illinois Compiled Statutes. This also included violations of the Illinois Controlled Substances Act. I attended Marquette University and graduated with a Bachelor of Arts degree with a major in International Affairs.

6. As part of my duties, I investigate criminal violations relating to narcotics trafficking and money laundering offenses, including criminal violations of the Federal Controlled

Substance laws, including, but not limited to Title 18, United States Code, Sections 1956 and 1957, and Title 21, United States Code, Sections 841, 843, 846, 848, 952, and 963. By virtue of my employment as a Special Agent and prior law enforcement experience, I have knowledge of and/or performed various tasks, which include, but are not limited to:

a. I have functioned as both a case agent and co-case agent in numerous investigations into illegal drug distribution conspiracies, including Title III investigations.

b. I have interviewed witnesses, confidential human sources (CHS) and sources of information (SOI) relative to the illegal trafficking of drugs and the distribution of monies and assets derived from the illegal trafficking of drugs (laundering of monetary instruments).

c. I have utilized informants to investigate drug trafficking. Through informant interviews, and extensive debriefings of individuals involved in drug trafficking, I have learned about the manner in which individuals and organizations distribute controlled substances in Wisconsin and throughout the United States.

d. I have also relied upon informants to obtain controlled substances from dealers.

e. I have extensive experience conducting street surveillance of individuals engaged in drug trafficking. I have participated in the execution of numerous search warrants where controlled substances, drug paraphernalia, and drug trafficking records were seized.

f. I am familiar with the appearance and street names of various drugs, including marijuana, heroin, cocaine, cocaine base (unless otherwise noted, all references to crack cocaine in this affidavit is cocaine base in the form of crack cocaine), ecstasy, and methamphetamine. I am familiar with the methods used by drug dealers to package and prepare controlled substances for sale. I know the street values of different quantities of the various controlled substances.

g. I am familiar with the language utilized over the telephone to discuss drug trafficking, and know that the language is often limited, guarded, and coded.

h. I know that drug traffickers often use electronic equipment and wireless telephones to conduct drug trafficking operations.

i. I know that drug traffickers commonly have in their possession, and at their residences and other locations where they exercise dominion and control, firearms, ammunition, and records or receipts pertaining to such.

j.  I know that drug traffickers often put their telephones in nominee names to distance themselves from telephones that are utilized to facilitate drug trafficking.

k.  I know that drug traffickers often use drug proceeds to purchase assets such as vehicles, property, and jewelry. I also know that drug traffickers often use nominees to purchase and/or title these assets to avoid scrutiny from law enforcement officials.

1.  My knowledge of the facts and circumstances contained within this affidavit is based on my personal investigation, as well as reports made to me by other law enforcement agencies, including agents of the Drug Enforcement Administration, local city and/or county law enforcement, information obtained from governmental institutions, information obtained from non-governmental institutions, including banking institutions located in Wisconsin and elsewhere, and various other reports obtained under order or subpoena. The statements contained in this affidavit are based either on my personal knowledge or information obtained from other law enforcement officers and witnesses. Throughout this affidavit, reference will be made to case "agents." Case agents are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom your affiant has had regular contact regarding this investigation. This affidavit is also based upon information gained from interview(s) and/or controlled buys with a confidential source (CS) whose reliability is established separately herein. This affidavit does not set forth every fact discerned throughout the investigation; rather, it contains a summary of the investigation to date and sets for the only those facts that I believe is necessary to establish the foundation for probable cause for an order authorizing the requested warrant.

7.  Based on the facts set forth in this affidavit, there is probable cause to believe that the user of the **Subject Cell Phone**, Antonio WESLEY-CARTER, and others, have violated, and are continuing to violate Title 21, United States Code, Sections 841(a)(1), 843(b), and 846

(hereinafter the TARGET OFFENSES). There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal offenses and will lead to the identification of other individuals who are engaged in the commission of said offenses.

**PROBABLE CAUSE**

8. In the fall of 2025, the Drug Enforcement Administration (DEA) Milwaukee District Office initiated an investigation into Antonio WESLEY-CARTER. Information was developed from a Confidential Source (CS) that identified WESLEY-CARTER as a kilogram quantity drug distributer in the Milwaukee, WI area. The CS relayed that WESLEY-CARTER utilized 414-336-1768 (**Subject Cell Phone**) to facilitate drug transactions. The CS relayed that the CS knew this from prior drug transactions that occurred between the CS and WESLEY-CARTER prior to the CS's cooperation wherein the CS contacted WESLEY-CARTER at the **Subject Cell Phone** to arrange to purchase controlled substances. The CS was shown a photograph of WESLEY-CARTER and the CS identified the person in the photograph as the person from whom the CS purchased controlled substances and the person known to the CS as the user of the **Subject Cell Phone**.

9. Beginning in October of 2025, the CS made statements against the CS's penal interest. The CS has the following criminal convictions: disorderly conduct, possession of THC and drug paraphernalia. The CS has not been promised consideration for providing law enforcement with information on on-going criminal activity. Thus far, the information provided by the CS has been corroborated by information known to case agents, as well as other law enforcement officials, gathered during the course of the CS's cooperation. The CS has provided information that has led to the seizure of controlled substances and the arrest of individuals. The CS also participated in at least two controlled buys as detailed below. Following the buys, the CS

was debriefed by case agents and the CS's versions of events were later corroborated by case agents' review of covertly recorded audio of the controlled buy transactions (as well as video of the first controlled buy). The CS has charged and pending felony drug charges and is cooperating with law enforcement in hopes of receiving judicial and prosecutorial consideration. Within the context of the information detailed and relied upon for purposes of this Affidavit, case agents believe that the CS is credible and the CS's information is reliable.

10.     Based on my training and experience, I know that a "controlled buy" is a law enforcement operation in which a confidential source (CS) purchases controlled substances from a target.  The operation is conducted using surveillance, usually audio and video taping equipment, and pre-recorded buy money.  When a confidential source (CS) is used, the CS is searched for contraband, weapons, and money before the operation.  The CS is also wired with a concealed body recorder and monitoring device.  When the transaction is completed, the CS meets case agents at a pre-determined meet location and gives the purchased drugs and the recording/monitoring equipment to the case agents.  The CS is again searched for contraband, weapons, and money. Additionally, all telephone calls made by the CS while under the direction and control of case agents are recorded.  The purchased controlled substances are then weighed and field tested by case agents.  To the extent that I refer to a controlled buy below, it was conducted in this manner unless otherwise noted.

11.     On or about November 18, 2025, the CS, at the direction of case agents, called the **Subject Cell Phone** in order to inquire about the purchase of cocaine. Following the phone call, the CS contacted case agents and relayed that the CS had spoken to WESLEY-CARTER and WESLEY-CARTER agreed to provide three ounces of cocaine to the CS for $2,100. Case agents

verified that this call was placed to the **Subject Cell Phone** by reviewing the CS's telephone and confirming the number that was dialed, but it was not recorded or witnessed by case agents.

12. On or about November 19, 2025, at the direction of case agents, the CS placed another call to the **Subject Cell Phone.** Following the phone call, the CS relayed that the CS had talked to WESLEY-CARTER and WESLEY-CARTER was ready for the drug transaction. Case agents verified that this call was placed to the **Subject Cell Phone** by reviewing the CS's telephone and confirming the number that was dialed, but it was not recorded or witnessed by case agents.

13. An additional phone call was placed to the **Subject Cell Phone** by the CS leading up to the drug transaction to confirm that WESLEY-CARTER would be ready to sell the CS cocaine. This phone call was recorded and witnessed by case agents. Case agents verified that this call was placed to the **Subject Cell Phone** by reviewing the CS's telephone and confirming the number that was dialed.

14. Based on my training and experience, I believe that the **Subject Cell Phone** is being utilized and will continue to be utilized by WESLEY-CARTER to coordinate drug transactions.

15. On November 19, 2025, in the afternoon, case agents met with the CS. The CS and CS's vehicle were searched for contraband and U.S. Currency with negative results. The CS was provided with $2,250 of pre-recorded U.S. Currency as well as audio and video recording equipment. At approximately the same time, case agents established surveillance in the area of 2743 N. 29th Street in Milwaukee, Wisconsin. According to the CS, this address was previously utilized by the CS to meet with WESLEY-CARTER for drug transactions prior to the CS's cooperation with law enforcement.

16. Case agents maintained constant visual contact while the CS was enroute to 2743 N. 29th Street (Target Residence). Case agents observed the CS's vehicle park in front of the Target

Residence. After a short time, case agents observed the CS exit the CS's vehicle and enter the residence. After a short time, the CS exited the residence and got into the CS's vehicle and departed. Case agents maintained constant visual contact with the CS's vehicle while enroute to a predetermined meeting location. Case agents met with the CS at the predetermined meeting location. Case agents retrieved the audio and video recording equipment. The CS turned over a clear plastic bag containing a white chunky substance (suspected cocaine) to case agents. The CS also turned over $150 of pre recorded U.S. Currency. Case agents searched the CS's vehicle and the CS for contraband with negative results.

17. The CS then provided a statement about what occurred within the Target Residence. The CS relayed that the CS had entered the residence and met with an older black male. The older black male provided the suspected cocaine to the CS and the CS provided $2,100 of pre-recorded U.S. Currency to the older black male. The CS relayed that the CS inquired as to the price of pills. The CS relayed that the older black male called an individual who the CS believed to be WESLEY-CARTER. The older black man then told the CS that the pills (ecstasy pills) were $70 a "jar" (a jar is 100 ecstasy pills). Initially, however, the older black male stated, "the blues" which I believe this to a be a reference to fentanyl pills. The CS clarified for the older black male that the CS was talking about ecstasy pills. The CS also relayed that the CS saw two plastic bags inside the house near a window sill containing what the CS believed was cocaine.

18. The CS also relayed that upon getting into the CS's vehicle, the CS received a phone call from the **Subject Cell Phone**. This call was recorded. Case agents later confirmed this by viewing the call log of the CS's cell phone and observed an incoming call from the **Subject Cell Phone** at the approximate time that the CS was seen within the CS's vehicle. The CS relayed that the CS spoke to WESLEY-CARTER (via the **Subject Cell Phone)**. WESLEY-CARTER clarified

that the price for ecstasy pills was $650 for 1,000 pills. Based on my training and experience, I believe that this also confirms that the older black male in the residence contacted WESLEY-CARTER to inquire about the price of the pills requested by the CS. The CS also relayed that the older black male had provided drugs to the CS in the past on behalf of WESLEY-CARTER. This was prior to the CS's cooperation with law enforcement.

19.     Case agents reviewed the covert recording made by the CS during the above-described controlled buy. Said recording was consistent with the CS's statement about what occurred concerning the cocaine purchase and discussion regarding the pills.  Case agents were able to see the older black male's face in the recording and subsequently identified him as Scott M. WILLIAMS. Case agents identified WILLIAMS as the older black male who provided the cocaine to the CS that the CS had ordered from WESLEY-CARTER.

20.     Case agents field tested the suspected cocaine and it tested positive for the presumptive presence of cocaine. Case agents weighed the cocaine and it weighed approximately 90.3 grams.

21.     On December 4, 2025, the Honorable William E. Duffin, Magistrate Judge in the Eastern District of Wisconsin, granted a court order for case agents to electronically monitor the location of the **Subject Cell Phone**.  On this same date, the court order was served to the service provider, Verizon Wireless.  Case agents began to receive pings for the **Subject Cell Phone** at approximately 3:56 p.m. on December 4, 2025.  This court order expired on January 3, 2026.

22.     On or about December 11, 2025, case agents met with the CS.  The CS and CS's vehicle were searched for contraband and U.S. Currency with negative results. The CS was provided with $2,750 of pre-recorded U.S. Currency as well as audio and video recording

equipment. At approximately the same time, case agents established surveillance in the area of the 2743 N. 29th Street (Target Residence).

23. At the direction of case agents, CS placed a telephone call to the **Subject Cell Phone,** which was answered by WESLEY-CARTER. Case agents witnessed, but did not record, this call between the CS and WESLEY-CARTER and confirmed that the call was placed to the **Subject Cell Phone** by observing the number dialed by the CS. During this call, the CS placed an order for 1,000 ecstasy pills and three ounces of cocaine. WESLEY-CARTER directed the CS to come to the area of the Target Residence.

24. Case agents maintained constant visual contact while the CS was enroute to the Target Residence. CS made no stops and interacted with no one from the time the CS was searched by case agents until the time the CS arrived at the Target Residence. The CS was ultimately observed parking the CS's vehicle in front of the Target Residence. A short time after the CS was observed arriving in the area, case agents observed a dark colored Toyota Highlander, Florida Plate DU1-1YT park in the alley directly behind the Target Residence. A black male (suspected to be WESLEY-CARTER but whose face was not observed by case agents) wearing dark colored clothing was observed exiting the Highlander and entering the door on the southwest corner of the Target Residence. After a short time, case agents observed the CS exit the CS's vehicle and walk towards the front door. The CS was observed standing at the bottom of the stairs near the front door for a brief period of time. Moments after the CS was observed at the bottom of the stairs, case agents observed the door on the southwest corner of the residence open. The CS was then observed walking around the side of the residence and entering that same southwest door. The CS remained inside the residence for approximately 4 minutes prior to case agents observing the CS

depart the same southwest door and return to the CS vehicle. The CS departed the area in the CS vehicle at this time.

25.     Case agents maintained constant visual contact with the CS's vehicle while enroute to a predetermined meeting location after the buy. The CS made no stops and interacted with no one from the time the CS departed from the Target Residence until the time that the CS met with case agents at the predetermined meeting location. Once at the predetermined meeting location, case agents retrieved the audio and video recording equipment. The CS also turned over a clear plastic bag containing a white chunky substance (suspected cocaine) and 10 clear plastic baggies each containing assorted multicolored pills (suspected ecstasy) to case agents. The CS and the CS's vehicle were again searched for contraband with negative results. Case agents field tested the white chunky substance and it tested positive for the presumptive presence of cocaine and weighed approximately 85 grams with including original packaging. Case agents field tested the ecstasy pills and they tested positive for the presumptive presence of MDMA and weighed approximately 430 grams with original packaging.

26.     The CS provided a statement to case agents as to what had occurred once inside 2743 N. 29th Street. The CS positively identified WESLEY-CARTER as the individual the CS met with inside the residence. The CS stated that the CS provided WESLEY-CARTER with the pre-recorded buy money and stated that WESLEY-CARTER pulled the baggie of suspected cocaine out of WESLEY-CARTER's pocket and handed it to the CS. The CS said that the CS observed the baggies of multicolored pills out in the open laying on a table ready to go.

27.     Case agents later learned that the video equipment the CS had been equipped with during this purchase had failed. Audio had been captured, but video was not. Case agents' review

of the audio was consistent with the statement provided by the CS about what had occurred while inside the Target Residence.

28. Case agents later ran Florida license plate DU1-1YT through law enforcement databases and learned that this vehicle is registered to PV Holding Corp, which is a subsidiary of the Avis Budget Group. On December 16, 2025, case agents provided a subpoena to Avis Budget Group via email for the rental portfolio on Florida plate DU1-1YT. On this same date, a response was received from Avis Budget Group that showed the vehicle had been rented by Javon CARTER (DOB: XX/XX/1986). According to Avis Budget Group, the vehicle was due to be returned on January 2, 2026. Additionally, the subpoena return indicated that CARTER had initially rented a Kia Telluride SUV, Florida plate 31B-SHP on December 2, 2025. Based on the subpoena return, it appeared that CARTER had switched the Kia Telluride for the Toyota Highlander on December 9, 2025. Case agents had observed the Kia SUV, Florida Plate 31B-SHP on December 9, 2025, at approximately 11:25 a.m. parked in front of the Target Residence.

**CONCLUSION**

29. Based upon the aforementioned facts detailing the use of the **Subject Cell Phone,** I believe that tracking the location of the **Subject Cell Phone** will allow case agents to identify routes of travel, source(s) of supply and other unidentified co-conspirators, possible stash locations, meeting locations, and distribution locations utilized by WESLEY-CARTER.

30. Based upon my training and experience, I know that individuals involved in drug trafficking use their cellular telephones to contact other subjects involved in criminal activity, and that information relating to their telephones may show the areas in which they are trafficking drugs and the individuals who they are contacting to distribute (or obtain) drugs. Based upon the facts in this affidavit, there is probable cause to believe that the user of the **Subject Cell Phone** (WESLEY-

CARTER) is engaging in drug trafficking and is utilizing the telephone number **414-336-1768 (Subject Cell Phone),** to commit violations of the TARGET OFFENSES.

31.     Based on all the forgoing, I submit that there is probable cause to believe that the user of **414-336-1768 (Subject Cell Phone)** is engaged in the distribution of controlled substances, the use of a communication facility in furtherance of a drug trafficking offense, and conspiracy to distribute controlled substances (TARGET OFFENSES).  I further believe that evidence of these offenses is likely to be found by tracking the location of cellular telephone number **414-336-1768 (Subject Cell Phone).**

32.     An administrative subpoena was served to Verizon for the **Subject Cell Phone**. Verizon confirmed that they serviced the **Subject Cell Phone**. Additionally, Verizon provided details regarding the subscriber information. The subscriber information provided by Verizon showed that no subscribe was listed to **Subject Cell Phone.** Based on my training and experience this is a common tactic by drug traffickers in order to avoid detection by law enforcement.

33.     In my training and experience, I have learned that VERIZON ("Service Provider") is a company that provides cellular telephone access to the general public.  I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the cellular telephones to which they provide service: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or cell tower/sector records.  E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers.  Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the

cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise than E-911 Phase II data.

34. Based on my training and experience, I know that VERIZON can collect E-911 Phase II data about the location of telephone number **414-336-1768 (Subject Cell Phone)**, including by initiating a signal to determine the location of telephone number **414-336-1768 (Subject Cell Phone)**, on VERIZON's network or with such other reference points as may be reasonably available.

## TECHNICAL BACKGROUND

35. In my training and experience, I have learned that the Service Provider is a company that provides cellular communications service to the general public. I also know that providers of cellular communications service have technical capabilities that allow them to collect and generate information about the locations of the cellular devices to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular device and, in some cases, the "sector" (i.e., faces of the towers) to which the device connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate general location of the cellular device.

### Cell-Site Data

36.    Based on my training and experience, I know that the Service Provider can collect cell-site data on a prospective basis about telephone number **414-336-1768 (Subject Cell Phone)**. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer was connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as the Service Provider typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

### E-911 Phase II / GPS Location Data

37.    I know that some providers of cellular telephone service have technical capabilities that allow them to collect and generate E-911 Phase II data, also known as GPS data or latitude-longitude data. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. As discussed above, cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data. Based on my training and experience, I know that the Service Provider can collect E-911 Phase II data about the location of

telephone number **414-336-1768 (Subject Cell Phone)**, including by initiating a signal to determine the location of telephone number **414-336-1768 (Subject Cell Phone)** on the Service Provider's network or with such other reference points as may be reasonably available.

## Pen-Trap Data

38. Based on my training and experience, I know each cellular device has one or more unique identifiers embedded inside it. Depending on the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The unique identifiers – as transmitted from a cellular device to a cellular antenna or tower – can be recorded by pen-trap devices and indicate the identity of the cellular device making the communication without revealing the communication's content.

## Subscriber Information

39. Based on my training and experience, I know that wireless providers such as the Service Provider typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service. I also know that wireless providers such as the Service Provider typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular device and other transactional records, in their normal course of

business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the user of telephone number **414-336-1768 (Subject Cell Phone)** and may assist in the identification of co-conspirators and/or victims.

## AUTHORIZATION REQUEST

40. Based on the foregoing, I request that the Court issue the proposed warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

41. I further request that the Court direct the Service Provider to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control.

42. I also request that the Court direct the Service Provider to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the location of telephone number **414-336-1768 (Subject Cell Phone)** on the Service Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

43. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of telephone

number **414-336-1768 (Subject Cell Phone)** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. See 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. See 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. See 18 U.S.C. § 3103a(b)(2).

44. Because the warrant will be served on the Service Provider, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the telephone number **414-336-1768 (Subject Cell Phone)** outside of daytime hours.

45. I further request that the Court order all documents in support of this application, including the affidavit and search warrant, be sealed until further order by the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize the investigation. I further request that the Court order any service provider, or their representatives, not to disclose the existence of this warrant or investigation unless ordered to do so by the Court.

<u>**ATTACHMENT A**</u>

**Property to Be Searched**

1. Records and information associated with the cellular device assigned call number **414-336-1768** (referred to herein and in Attachment B as the **"Subject Cell Phone"**), that is in the custody or control of VERIZON (referred to herein and in Attachment B as the "Service Provider"), a wireless telephone service provider headquartered in 1095 6th Avenue, New York, New York, with no known subscriber information, and used by Antonio WESLEY-CARTER.

2. The **Subject Cell Phone**

<u>**ATTACHMENT B**</u>

**Particular Things to be Seized**

I.      **Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A.

a.  The following subscriber and historical information about the customers or subscribers associated with **414-336-1768 (Subject Cell Phone)** for the time period from September 19, 2025 to the present:

   i.   Names (including subscriber names, usernames, and screen names);

   ii.  Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

   iii. Local and long-distance telephone connection records;

   iv.  Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

   v.   Length of service (including start date) and types of service utilized;

   vi.  Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

   vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address);

   viii. Means and source of payment for such service (including any credit card or bank account number) and billing records; and

ix. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by **414-336-1768 (Subject Cell Phone)**, including:

(A) the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and
(ii) information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received).

b. Information associated with each communication to and from **414-336-1768 (Subject Cell Phone)** for a period of 30 days from the date of this warrant, including:

i. Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

ii. Source and destination telephone numbers;

iii. Date, time, and duration of communication; and

iv. All data about the cell towers (i.e., antenna towers covering specific geographic areas) and sectors (i.e., faces of the towers) to which the Subject Cell Phone will connect at the beginning and end of each communication.

The Honorable William E. Duffin has also issued an order pursuant to 18 U.S.C. § 3123, dated December 4, 2025, for such information associated with the **Subject Cell Phone**.

c. Information about the location of **414-336-1768 (Subject Cell Phone)** for a period of 30 days, during all times of day and night. "Information about the location of **414-336-1768 (Subject Cell Phone)** includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information.

i. To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Provider, the Provider is required to disclose the Location Information to the government. In addition, the Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Provider's services, including by initiating a signal to determine the location of **414-336-1768**

**(Subject Cell Phone)** on the Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate the Provider for reasonable expenses incurred in furnishing such facilities or assistance.

ii. This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II. Information to be Seized by the Government

All information described above in Section I that constitutes evidence, fruits, contraband, and instrumentalities of violations of 21 U.S.C. §§ 841(a)(1), 843(b), and 846 (TARGET OFFENSES) involving WESLEY-CARTER during the period November 1, 2025, to the present.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. See 18 U.S.C. § 3103a(b)(2). The Court finds reasonable necessity for use of the techniques and collection of information described. See 18 U.S.C. § 3103a(b)(2).